UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE JARVIS AUSTIN,<br><br>    Plaintiff,<br><br>    v.<br><br>KEMPER CORPORATION (INSURANCE),<br><br>    Defendant. | Case No. 21-cv-03208-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 54 |

Before the Court is defendant Kemper Corporation's motion to dismiss the First Amended Complaint ("FAC") per Fed. R. Civ. Proc. 12(b)(6), and defendant's motion to strike certain portions of the FAC per Fed. R. Civ. Proc. 12(f). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and VACATES the hearing set for October 22, 2021. The Court GRANTS defendant's motion to dismiss the FAC in its entirety, rendering defendant's 12(f) motion to strike moot. Leave to amend is granted.

**BACKGROUND**

The complaints allege that in March 2020, plaintiff George Jarvis Austin was rear-ended by an unnamed driver in Stockton, California. The driver was insured by defendant Kemper Corporation, headquartered in Chicago, Illinois. Plaintiff filed his complaint against Kemper on April 29, 2021, invoking this Court's diversity jurisdiction. After receiving proper service, defendant filed a motion to dismiss plaintiff's complaint for failure to state a claim on which relief could be granted. Dkt. No. 21 (motion filed July 15, 2021). In the same motion, the defendant moved for a more definitive statement and moved to strike allegedly irrelevant portions of the plaintiff's complaint. *Id*. Before this Court could rule on defendant's Rule 12 motions, plaintiff

filed a First Amended Complaint ("FAC") as a matter of course per Fed. R. Civ. Pro. 15. Dkt. No. 27 (FAC filed on July 19, 2021).

The FAC alleges that plaintiff incurred thousands of dollars in medical expenses from the auto accident. *Id*. at 4, 10.[1] Plaintiff alleges that after the accident, the defendant-insurer solicited information pertaining to plaintiff's injuries to calculate an appropriate settlement amount. *Id*. at 5. According to the FAC, defendant represented it would get back to plaintiff with a settlement offer within 45 days of when plaintiff provided defendant with documentation of his loss. *Id*. Defendant failed to deliver a settlement offer or otherwise communicate with plaintiff within that timeframe.

The FAC contains four Causes of Action. The First Cause of Action alleges that defendant, by not following up with plaintiff within 45 days, intentionally engaged in "discriminatory behavior to refuse service." *Id*. at 6. Based on these same delays, the Second Cause of Action alleges breach of contract, *id*. at 17, the Third Cause of Action alleges breach of an insurance contract, *id*. at 18, and the Fourth Cause of Action—although presented as a negligence claim—alleges that defendant breached the duty of good faith and fair dealing.

On August 9, 2021, defendant filed a motion to dismiss the FAC for failure to state a claim. Dkt. No. 54. Defendant's motion also moved to strike various parts of the FAC as irrelevant. *Id*. In the defendant's view, a discrimination claim was not properly alleged because plaintiff failed to plausibly state whether and how defendant became aware of plaintiff's protected status. Regarding the two breach of contract claims, defendant argued that plaintiff failed to describe the terms of the alleged contract, or to plead facts that would suggest that a contract even existed at all. Finally, defendant asserts that plaintiff—as a third-party beneficiary of defendant's insurance contract with the unnamed driver—lacks legal standing to claim a breach of the duty of good faith and fair dealings.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state

---

[1] For ease of reference, page number citations refer to the EFC branded numbers in the upper right corner of the page.

1   a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
2   The plausibility standard requires that the plaintiff allege facts that add up to "more than a sheer
3   possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
4   While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts
5   sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.
6   When deciding whether a complaint satisfies federal pleading standards, courts must accept as true
7   all *factual* allegations in a complaint. *Iqbal*, 556 U.S. 678. Notably, the presumption of truth does
8   not apply to "threadbare recitals" of the legal elements of a cause of action. *Id.* Similarly,
9   "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"
10  need to be accorded the presumption of truth when deciding a motion to dismiss. *In re Gilead Scis.*
11  *Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

12  Because plaintiff is proceeding pro se in this case, the Court must "construe the pleadings
13  liberally and [] afford the [plaintiff] the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026,
14  1027 n.1 (9th Cir. 1985) (en banc). However, sufficient facts must still be alleged from which the
15  Court can infer the existence of a plausible right of relief. *Ivey v. Bd. of Regents of Univ. of Alaska*,
16  673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

### I.    First Claim - Discrimination

20  In support of the intentional discrimination claim, the FAC alleges defendant exhibited
21  "discriminatory behaviors in a variety of ways including lack of service and follow up according to
22  their own stated policy, and deafening silence." Dkt. No. 27 at 10. The FAC states plaintiff's
23  intentional discrimination claim arises under both state and federal law. Even accepting all
24  following factual allegations as true, plaintiff has failed to establish a plausible claim of intentional
25  discrimination.

26  After soliciting information about plaintiff's loss, defendant told plaintiff it would be in
27  touch within 45 days to discuss a potential settlement of his claim against the insured driver. At
28  some point in these interactions, defendant learned of plaintiff's "protected statuses" as a black male

1   with temporary disability from the auto accident. Dkt. No. 27 at 5 (FAC).  Over two hundred days
2   passed and no "appropriate follow up… occurred." *Id*. at 7.  Based on this delay, plaintiff concludes
3   defendant discriminated against him because of his race. *Id*. at 10.  Because he has "waited more
4   than 4 times the 'maximum' wait times as stated" by defendant's "internal policy," *id*., plaintiff
5   alleges defendant "intentionally discriminated not only in nonperformance, but refusal of service,
6   communication and basic profession courtesy." *Id*. 16.  Insofar as plaintiff alleges intentional
7   discrimination, the foregoing facts do not permit this Court to draw a reasonable inference of
8   discriminatory intent.

9   Intent is elusive.  Thus, plaintiffs seeking relief under federal law need not provide *direct*
10  evidence of discriminatory intent at the pleading stage.  For example, a party may plausibly plead
11  discriminatory intent by suggesting that "a similarly situated individual or entity outside of the
12  plaintiff's protected group received more favorable treatment from the defendant." *Snoqualmie*
13  *Indian Tribe v. City of Snoqualmie*, 186 F. Supp. 3d 1155, 1162 (W.D. Wash. 2016).  The FAC
14  might be read to suggest that a comparator group (whites) received more favorable treatment than
15  plaintiff's protected group (blacks).  However, the FAC fails to provide a factual basis for plausibly
16  inferring such differential treatment occurred.  Instead, the FAC invokes the "similarly-situated-
17  persons" analysis only when describing an unrelated civil lawsuit against Denny's (the restaurant)
18  for discriminating against black customers with longer wait times and higher prices.

19  The *only* proffered factual basis for intentional discrimination is plaintiff's claim that he has
20  waited over 200 days without communication from defendant, who apparently knew of his race.
21  While an insurer's failure to abide by its own internal timelines and procedures for investigation and
22  settlement can confer the policyholder with claim of "bad faith" in some contexts, *DeFrenza v.*
23  *Progressive Express Ins. Co*., 345 F. Supp. 3d 1243, 1252 (E.D. Cal. 2017), there is no basis in law
24  to conclude that mere delays, without more, plausibly indicate intentional racial discrimination
25  under federal law.

26  Plaintiff's state law discrimination claim fails for the same reasons as his federal claims.
27  Under California state law, a business establishment may face civil liability for refusing to do
28  business with a person "on account of" a protected characteristic.  Cal. Civ. Code § 51.5 ("Unruh

Act"). Historically, "a plaintiff seeking to establish a case under the Unruh [Civil Rights] Act must plead and prove intentional discrimination." *Harris v. Cap. Growth Invs. XIV*, 52 Cal. 3d 1142, 1149 (1991), overruled in part by *Munson v. Del Taco, Inc.,* 46 Cal. 4th 661, 670, (2009) (holding that "a plaintiff proceeding under section 51, subdivision (f) [of the Unruh Act] may obtain statutory damages on proof of an [American with Disabilities Act] access violation without the need to demonstrate additionally that the discrimination was intentional.").

Accordingly, a plaintiff alleging discrimination (outside of the narrow context addressed in *Munson*) must still plead facts that suggest discriminatory intent. As previously discussed, the Court finds no factual basis in plaintiff's FAC for inferring discriminatory intent. Accordingly, plaintiff's federal and state law discrimination claims are inadequately pled.

## II.     Second and Third Claims - Breach of Contract & Breach of Insurance Contract

The FAC alleges defendant's delays amounted to a breach of contract. The contractual breach, plaintiff maintains, is "evidenced by a. documents filed with the company, b. their standard policy (45 days [to respond]), c. oral promises by Defendant, d. accepted promises along with completed and signed documents (and emails cementing the contract)." Dkt. No. 27 at 19.

A few days before filing the FAC, plaintiff uploaded into this Court's docket several documents to substantiate the existence of a contractual agreement (puzzlingly, these documents were filed under the header, "Redaction of Joint Case Management Statement."). Dkt. No. 24 (plaintiff's documents). Plaintiff's FAC and brief in opposition to dismissal both refer to these documents extensively in support of the breach of contract claims. Typically, courts may not consider documents outside of the pleadings when deciding the sufficiency of a complaint under Rule 12(b)(6). *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (doing so requires the court to "convert the 12(b)(6) motion into a Rule 56 motion for summary judgment."). However, when the plaintiff incorporates documents "by reference" into a complaint and "refers extensively to the document or the document forms the basis of the plaintiff's claim," the Court may consider the documents in its 12(b)(6) analysis.

"A cause of action for breach of contract requires proof of the following elements: (1)

existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado* 158 Cal.App.4th 1226, 1239 (2008). If no contract exists, there can be no breach of contract claim. Notably, at the pleading stage, "plaintiff's failure either to attach or to set out verbatim the terms of the contract [is] not fatal to his breach of contract cause of action." *Miles v. Deutsche Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394, 402 (2015). It suffices to "allege" facts supporting a reasonable inference that a contract exists. See *id*. Here, the facts alleged in the FAC and supporting documentation are insufficient to infer the existence of a contract between plaintiff and defendant.

No one disputes that plaintiff lacked a preexisting contract with defendant prior to the accident. Instead, plaintiff repeatedly refers the Court to Dkt. No. 24 for "evidence" of a later "signed Defendant contract with Plaintiff." Dkt. No. 27-5. The Court finds the proffered documents inadequate to that task. For example, plaintiff describes the first document, at Dkt. No. 24-1, as the "Signed & Accepted Defendant Kemper Contract (with Oral reiteration of their written 45 day policy)." However, that document is a mere form letter sent to plaintiff from defendant requesting information to "accurately coordinate benefits with Medicare and to meet its mandatory reporting obligation under Medicare law." Dkt. No. 24-1 at 2. The form letter (1) asks plaintiff whether he is a Medicare or Medi-Cal recipient, (2) requests plaintiff's auto insurance information, and (3) inquiries into what type of injuries plaintiff sustained from the loss. *Id*. at 1. Plaintiff furnished the requested information, and the attached letter contains plaintiff's handwritten answers. However, there is no language in this document evincing a contractual agreement to settle or to an intent enter into a settlement agreement in the future.

Further, the entry titled "Affidavit Submitted & Confirmed received Documents as part of Plaintiff's submitted, signed, and breached policy (making clear Plaintiff's Protected Status - including temporary disability from Car Accident)," at Dkt. No. 24-2, is merely a highlight reel of plaintiff's personal accomplishments and educational pursuits. Finally, Dkt. No. 24-3, allegedly one of the emails that "cemented" the contract, contains no such adhesives. Rather, Dkt. No. 24-3 contains a screen shot of an email from plaintiff to one of defendant's employees, in which he attaches "paperwork which [he] will also be sending via fax, and perhaps with tracking US Postal

1  Service," and asks the recipient to "confirm receipt (and let [him] know if any additional information
2  is required)." Dkt. 24-3 at 1. Plaintiff did not share with the Court the paperwork he attached to the
3  email or explain the contents of that paperwork, other than to say that these documents somehow
4  evinced "an agreement" with the insurer. Such a legal conclusion "devoid of 'further factual
5  enhancement'" does not plausibly establish the existence of a contract. *Iqbal*, 556 U.S. at 678
6  (quoting *Twombly*, 550 U.S. at 557). Accordingly, plaintiff has not adequately pled a breach of
7  contract claim. For the same reasons, plaintiff's breach of insurance contract claim also fails.

### III. Fourth Claim - Breach of Duty of Good Faith and Fair Dealing

While the FAC's fourth Cause of Action is titled "Negligence," the claim alleged is substantively a violation of the "duty of good faith and fair dealing by refusing to follow [defendant's] own (45 day maximum) deadline for settlement offer, refusal to communicate, investigate, or serve Plaintiff needs, and unreasonable delay." Dkt. 27 at 19.

To the extent plaintiff pleads a violation of the covenants that cover the relationship between an insurer and its insured, plaintiff's claim is foreclosed by *Moradi–Shalal v. Fireman's Fund Ins. Companies* 46 Cal.3d 287, 250 (1988). *Moradi-Shalal* holds that "a third party claimant—an individual who is injured by the alleged negligence of an insured party—does not have a private right of action against the insurer for unfair settlement practices." *Coleman v. Republic Indem. Ins. Co.*, 132 Cal. App. 4th 403, 406 (2005). See also *Krupnick v. Hartford Accident & Indem*. Co., 28 Cal. App. 4th 185, 188 (1994) ("[T]he Insurance Code provisions which define unfair settlement practices were never intended by the Legislature to permit a third-party, civil action directly against an insurance company."). The California Supreme Court has long held the position that a third party cannot enforce the implied covenant of good faith and fair dealing against the insurer, "because that obligation was intended to benefit the insured, not the injured claimant." *Clark v. California Ins. Guarantee Assn.*, 200 Cal. App. 4th 391, 398 (2011), discussing *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 943 (1976). Absent an allegation that defendant's insured assigned their rights against defendant to plaintiff, see *Clark*, 200 Cal. App. 4th at 399, plaintiff, as a third party, has no basis to allege a breach of the implied covenants of good faith and fair dealing.

7

**CONCLUSION**

The Court GRANTS defendant's motion to dismiss as to all claims. Accordingly, defendant's motion to strike is dismissed as moot. Plaintiff is granted leave to amend. **Any amended complaint must be filed no later than October 22, 2021.**

**IT IS SO ORDERED**.

Dated: October 13, 2021

_____
SUSAN ILLSTON
United States District Judge